William H. Boger v. Commissioner.
William H. Boger v. Commissioner
Docket No. 94458.
United States Tax Court
T.C. Memo 1963-137; 1963 Tax Ct. Memo LEXIS 207; 22 T.C.M. (CCH) 651; T.C.M. (RIA) 63137; May 21, 1963
*207 Held, petitioner failed to prove by competent evidence that he is entitled to deduct (1) a capital loss carryover; (2) a business bad debt; and (3) depreciation in excess of the amount allowed by respondent. Robert H. Albert, for the petitioner. Dennis J. Fox, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined a deficiency in petitioner's income tax for the year 1959 in the amount of $2,101.20. The issues for decision are: (1) Whether petitioner is entitled to a deduction of $200 in 1959 for a capital loss carryover as a result *208 of corporate stock becoming worthless in 1958; (2) Whether petitioner is entitled to a business bad debt deduction in the amount of $8,230.50, [1] and (3) Whether petitioner is entitled to depreciate a business building at the rate of 4 percent as claimed by petitioner or 3 percent as determined by respondent. Findings of Fact The stipulated facts are found accordingly. Petitioner is an individual who resided in Columbus, Ohio, during the year 1959. He filed a Federal income tax return for the calendar year 1959 with the district director of internal revenue, Cincinnati, Ohio. The only income reported on his return was salary from G. M. Baker and Son, Inc. (hereafter called Baker), a small amount of dividends, and rental on the building hereinafter mentioned. He also claimed on his return a capital loss in the amount of $200, resulting from a capital loss "Per 1958 Return" in the amount of $1,200 less $1,000 allowable in 1958; and a loss on a bad debt in the amount of $8,230.50. [1]
*209 Baker was incorporated in Ohio in 1941 and was in the business of drilling commercial water wells. Petitioner was president of Baker in 1959 and, at least since 1954, has owned all its outstanding stock. Petitioner had been in the same business, as an employee of others, for approximately 33 years. Petitioner loaned money to Baker and personally guaranteed loans to Baker from time to time. The Indiana-Michigan Water Development Company, Inc. (hereafter called Indiana), was incorporated in Indiana in 1954 and prior to 1959 had been engaged in the business of drilling commercial water wells, principally in Indiana and Michigan. A predecessor corporation, with which petitioner had had contact, had been in existence since 1929. During the years 1958, 1959, and 1960, 125 shares of stock of Indiana were issued and outstanding, of which Baker owned 113 and petitioner owned the remaining 12, which he acquired in 1954. Petitioner acquired his 12 shares, and apparently had Baker acquire its 113 shares, to expand the business of Baker and to make room for petitioner's two sons in the business. Baker and Indiana filed consolidated Federal income tax returns since 1954 on the basis of a fiscal *210 year ending March 31. Petitioner was president and his son, William H. Boger, Jr., was general manager and secretary-treasurer of Indiana in 1959 until the latter job was terminated in September of that year. Both petitioner and Baker made loans to Indiana from time to time. An analysis of petitioner's account with Indiana through December 31, 1961, is as follows Date
Debit
Credit
Balance
1955
Jan. 3
$1,500.00
$1,500.00
Feb. 28
1,000.00
2,500.00
Apr. 4
400.00
2,900.00
May 14
$ 400
2,500.00
1956
Dec. 28
3,000.00
5,500.00
Dec. 31
740.00
6,240.00
1959
Jan. 31
1,100.00
7,340.00
Feb. 28
1,100
6,240.00
Feb. 28
1,000.00
7,240.00
Mar. 31
1,000
6,240.00
Apr. 24
300.00
6,540.00
July 2
335.00
6,875.00
Aug. 13
635
6,240.00
1960
Mar. 31
746.81
6,986.81 The balance in petitioner's account was unpaid as of December 31, 1961. During the fiscal year ending March 31, 1960, Indiana transferred certain equipment to Baker so as to reduce its indebtedness to Baker by $5,975 to $5,655.56 as of March 31, 1960. The balance sheets of Indiana as of March 31, 1960 and 1961, attached to the consolidated returns, *211 were as follows: Mar. 31, 1960
Mar. 31, 1961
Assets
Cash
$ 38.83
$ 110.48
Accounts receivable
7,637.98
3,467.49
Total
$ 7,676.81
$ 3,577.97
Liabilities
Accounts payable
$30,960.21
$26,151.05
Notes payable
12,727.37
13,977.37
Accrued expenses
188.40
16.03
Common stock
12,500.00
12,500.00
Surplus (Deficit)
(48,699.17)
(49,066.48)
Total
$ 7,676.81
$ 3,577.97
Prior to 1959 petitioner made some efforts to dispose of the assets and liabilities or the business of Indiana, without success. During 1959 petitioner owned certain realty at 145-149 East Hosack Street, Columbus, Ohio, on which was located a one-story concrete-block building with a built-up tarred roof. The building was about 15 to 20 feet high and contained approximately 10,000 square feet. It contained no unusual equipment and during the year 1959, two-thirds of the space was rented to Baker and one-third was rented to Peters Machine Company on a year-to-year basis. On his income tax return for the year 1959 petitioner reported that the building was an industrial building acquired March 1, 1958, for a cost of $27,500, and claimed depreciation thereon on the straight-line method *212 at the rate of 4 percent and in the amount of $1,100. Petitioner included the plumbing, electrical, and heating fixtures as a part of the building and depreciated them all as one unit. In his notice of deficiency respondent reduced the rate of depreciation to 3 percent and the amount allowable as a deduction to $825. Opinion Each of the issues here involved poses a question of fact and petitioner has the burden of proof on each. We must conclude on the record presented that petitioner has failed to prove error in respondent's determination with respect to any of the issues. We have made an effort to include in our Findings of Fact all pertinent facts which could be found from competent evidence in the record. The first issue involves a deduction for a capital loss carryover which petitioner claims to be entitled to as a result of his 12 shares of stock of Indiana becoming worthless in 1958. Respondent concedes on brief (apparently on the theory that the equity capital would become worthless before the debts of the corporation would become worthless) that the stock became worthless in 1958, but contends there is no evidence to prove petitioner's basis in the stock and therefore *213 the deduction is not allowable. We agree with respondent that there is no competent evidence in this record to prove petitioner's basis in the stock. The only evidence on the point is the stipulated balance sheet of Indiana which shows the capital stock to be $12,500 and the stipulation that petitioner owned 12 of the 125 shares outstanding. If petitioner paid 12/125 of the total capital shown he would have paid $1,200 for his 12 shares. But petitioner offered no evidence regarding the circumstances under which he acquired the stock or how much he paid for it. Furthermore, we have no evidence whether the capital loss, if established to have been incurred in 1958, was not absorbed by capital gains in that year. We cannot determine from the evidence either petitioner's basis in the stock or the fact of its worthlessness in 1958, and hence must deny the deduction. However, in view of respondent's concession on brief and the fact that it should be possible for the parties to ascertain from proper records what petitioner's basis in the stock was and whether he had capital gains in 1958, possibly this issue can be handled administratively before the tax is assessed. It is similarly argued *214 without foundation in the record that the debt owing to petitioner by Indiana became worthless in 1959 and that is was a business bad debt. While petitioner testified orally, albeit vaguely, that he had advanced money to both Baker and Indiana at times when they needed working capital, and that he had personally guaranteed loans to Baker, there is no competent evidence showing that he was in the business of loaning money to, or otherwise financing and promoting, corporations; Whipple v. Commissioner, - U.S. - (1963); H. Beale Rollins, 32 T.C. 604 (1959), affd. 276 F. 2d 368 (C.A. 4, 1960); nor that he had to protect his primary business by subordinating these debts to those of other creditors or by making the loans in the first instance, cf. Tony Martin, 25 T.C. 94 (1955); Wilfred J. Funk, 35 T.C. 42 (1960); nor that the loans were incurred in connection with the rental of the building, see Whipple v. Commissioner, supra. In fact, petitioner testified that he had never been called upon to guarantee or otherwise protect the loans of other creditors to Indiana. This was not a business bad debt which, if wholly worthless in 1959, *215 would be deductible in full in that year. And only if the debts were created or acquired in connection with petitioner's trade or business or if the loss from their worthlessness was incurred in his trade or business would these debts be business bad debts, the partial worthlessness of which might entitle him to a partial deduction in 1959. Sec. 166(d), I.R.C. 1954; sec. 1.166-5(a)(2), Income Tax Regs.
Furthermore, the debt from Indiana to petitioner has not been shown to be wholly worthless in 1959 so as to entitle petitioner to a deduction, as limited by sections 1211 and 1212, I.R.C. 1954, for a wholly worthless nonbusiness bad debt. Not only did petitioner lend money to Indiana during 1959, all of which appears to have been repaid during that year, but he also advanced an additional amount to that corporation in 1960. Furthermore, the balance sheets of Indiana for its fiscal years ending March 31, 1960 and 1961, indicate there were some assets left for payment of creditors even as of those dates. And while it is stipulated that Indiana transferred equipment to Baker prior to March 31, 1960, to reduce its *216 debt to Baker, there is no showing whether this transfer was made prior to December 31, 1959, or of the value of the equipment transferred. The final issue is the allowable depreciation on the building owned by petitioner. All the facts made available to us by competent evidence with respect to this issue are set forth in our Findings of Fact. They do not permit us to hold that respondent's determination of useful life of the building was erroneous. While petitioner testified he thought the building was constructed about 1941, he admitted that he did not know of his own knowledge when or by whom the building was built. No expert testimony was offered. There is no evidence of the use to which the building had been or was being put - except the statement on petitioner's income tax return that it was an industrial building and was rented to Baker and to a machine company. The only evidence on the condition of the building was petitioner's testimony that it was "average or little less," with no explanation of his basis for this statement or what he meant thereby. While we have no evidence why respondent determined that the useful life to be used in depreciating the building was 33 1/3 years *217 rather than 25 years, respondent's determination is presumed to be correct and petitioner has not presented sufficient evidence to overcome that presumption or to give us any basis for making an independent determination of the useful life of the building. Decision will be entered for the respondent. Footnotes
1. Petitioner conceded at the trial that the unpaid balance of the debt at December 31, 1959, was $6,240 and that the deduction should be limited to that amount.↩
1. Petitioner conceded at the trial that the unpaid balance of the debt at December 31, 1959, was $6,240 and that the deduction should be limited to that amount.↩